ROGER EDWARD GARDNER *v.* STATE OF MARYLAND

[No. 16, September Term, 1979.]

*Decided December 13, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, ORTH and COLE, JJ.

*Paul Mark Sandler,* with whom were *David Freishtat* and *Freishtat, Schwartz & Sandler* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

In this case, the primary issue we are asked to decide is whether one conspirator's conviction may stand where the sole co-conspirator is acquitted at a subsequent trial.

The facts are not in substantial dispute and may be set

522

forth briefly. Gardner was a contract killer who conspired with Ralph Lubow to murder Morton Hollander and Alvin Blum. Gardner decided to sub-contract the killing of Blum to one Timothy McDonald for $10,000. Gardner had several meetings with McDonald and gave him $60.00 for expense money, a gun, and ammunition to effect the killing. Gardner also told McDonald that he (Gardner) would first kill Hollander and that if this did not create the desired result, McDonald would be directed to kill Blum. However, if McDonald was not called upon to kill Blum, McDonald would be paid $3,000 in any event. McDonald later learned from Gardner that Ralph Lubow was directing the operation and met with Lubow who promised to pay him $2,500. At a subsequent meeting, he did in fact pay McDonald $500.00. Gardner and Lubow were arrested and charged [1] with criminal misconduct in a five count indictment which included two counts of conspiracy to commit murder, two counts of solicitation to commit murder and a handgun violation. Gardner requested a separate trial and was tried without a jury, several months before Lubow in the Circuit Court for Howard County. As part of his defense, Gardner offered expert testimony in an effort to prove that Lubow was insane at the time of the alleged conspiracy and hence there could be no conspiracy. The State in rebuttal presented expert and lay testimony. The trial judge, after denying Gardner's motions for judgment of acquittal, specifically rejected Gardner's defense that Lubow was legally insane and that there was no meeting of the minds. The trial judge then found Gardner guilty (1) of conspiring with Lubow to commit the murder of one Morton Hollander, (2) conspiring with Lubow to commit the murder of Alvin Blum, and (3) soliciting Timothy McDonald to commit the murder of one Alvin Blum. On March 21, 1978 Gardner was sentenced to a term of five (5) years imprisonment on each of the three counts, to be served concurrently. He appealed to the Court of Special Appeals.

---

1. McDonald was a police informant and was not charged.

Several months later, Lubow was tried before a jury in the Circuit Court for Howard County. The trial judge granted Lubow's motion for acquittal as to the count charging conspiracy with Gardner to commit the murder of Morton Hollander; the jury found Lubow not guilty by reason of insanity on the remaining counts of conspiracy to commit the murder of Alvin Blum and solicitation to commit the murder of Alvin Blum.

Gardner's convictions were affirmed by the Court of Special Appeals. *Gardner v. State,* 41 Md. App. 187, 396 A.2d 303 (1979). We granted his petition for certiorari to review the two questions presented:

1. Whether the subsequent acquittal of Gardner's alleged co-conspirator, Ralph Lubow, renders null and void Gardner's conviction for conspiracy.

2. Whether Gardner's conviction for solicitation to murder was supported by sufficient evidence.

Gardner contends before us, as he did before the intermediate appellate court, that his convictions for conspiracy were rendered null and void when a jury subsequently found his alleged co-conspirator not guilty by reason of insanity. Thus, he contends there could be no meeting of the minds between him and Lubow and his conviction is inconsistent with the verdict in Lubow's trial.

The State counters with two contentions. First, the State argues that when two are charged with conspiracy and tried separately the conviction of one is not inconsistent with the acquittal of the other. Second, it maintains that the insanity verdict at Lubow's trial does not necessarily mean that an illegal meeting of the minds did not occur.

I.

The crime of conspiracy requires "a combination of two or more persons, [who] by some concerted action [seek] to accomplish some criminal or unlawful purpose; or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Lanasa v. State,* 109 Md. 602, 607, 71 A. 1058 (1909); *State v. Buchanan,* 5 H. & J. 259 (1821).

Concerted action in conspiracy means that there can be no crime without the consent of two or more minds forming a criminal intent. The crime is complete without any overt act and may be proved by circumstances giving rise to an inference of common design. The gravamen of the crime is the illegal scheme or design harbored by at least two persons.

Thus, it is settled that the crime of conspiracy necessarily requires the participation of at least two people. Where the participation of only one is shown the crime is incomplete and a conviction as to him is void. This proposition is recognized in the law as the rule of consistency: that "as one person alone cannot be guilty of conspiracy, when all but one conspirator are acquitted, conviction of the remaining conspirator cannot stand." *Hurwitz v. State,* 200 Md. 578, 92 A.2d 575, 581 (1952). The rule developed many years ago when the practice was to try all persons charged with the crime of conspiracy together. Under such circumstances, common sense dictated that verdicts based on the same evidence and circumstances should be consistent. Accordingly the rule has developed primarily regarding joint trials. *E.g., Romontio v. United States,* 400 F.2d 618 (10th Cir. 1968); *Lubin v. United States,* 313 F.2d 419 (9th Cir. 1963); *State v. Smith,* 117 Ark. 384, 175 S.W. 392 (1915); *Berry v. State,* 202 Ind. 294, 173 N.E. 705 (1930); W. LaFave and A. Scott, Jr., *Criminal Law* § 62, at 488 (1972); 16 Am.Jur.2d *Conspiracy* § 33 (1964).

However, while the evidence at the trial of a conspirator must show that he and at least another are guilty of forming an illegal scheme, it is not necessary that more than one person be convicted. Thus, the quantum of proof is sufficient at the trial of A when the evidence convinces the trier of fact beyond a reasonable doubt that A and B agreed with one another to accomplish some criminal purpose or to accomplish some purpose, not in itself criminal, by criminal or unlawful means. The rule of consistency has been held not to apply when A has been convicted of conspiracy and B has been granted immunity, *Hurwitz,* 200 Md. 578, or when B is dead, *State v. Davenport,* 227 N.C. 475, 42 S.E.2d 686 (1947), unknown, *Adams v. State,* 202 Md. 455, 97 A.2d 281 (1953), *rev'd on other grounds, sub nom Adams v. Maryland,* 347 U.S.

179, 74 S. Ct. 442, 98 L. Ed. 608 (1954), untried, *DeCamp v. United States,* 56 App. D.C. 119, 10 F.2d 984 (1926), unapprehended, *Rosenthal v. United States,* 45 F.2d 1000 (8th Cir. 1930), or unindicted, *United States v. Monroe,* 164 F.2d 471 (2d Cir. 1947), *cert. denied,* 333 U.S. 828, 68 S. Ct. 452, 92 L. Ed. 1113 (1948). In these and other situations in which there has been no judicial determination of the guilt or innocence of the alleged co-conspirators, i.e., no adjudication on the merits, there is nothing incongruous or inconsistent about convicting a sole defendant if there is sufficient evidence of the conspiracy. *People v. Bryant,* 409 Ill. 467, 100 N.E.2d 598 (1951); *People v. Berry,* 84 Mich. App. 604, 269 N.W.2d 694 (Ct. App. 1978).

Gardner argues that the situation is different when one conspirator is convicted and his co-conspirator is acquitted; he contends a repugnancy in the verdicts arises which the law will not allow to subsist. He urges us to apply the rule of consistency to separate trials.

This Court has never been squarely presented with the issue of whether the rule of consistency should be applied to separate trials of co-conspirators. Gardner contends that logic and fundamental fairness requires that the rule be so applied and relies on the early case of *Bloomer v. State,* 48 Md. 521 (1878) to support his view. In *Bloomer,* Bloomer and others were indicted for conspiracy to defraud a railroad company through the fraudulent use of passes and tickets. Bloomer, in an effort to rebut the evidence of conspiracy against him, offered in evidence the record of acquittal of his alleged co-conspirators by a New Jersey court. The court stated that "as conspiracy is the consent of two or more minds, where two only are charged, the acquittal of one must be the acquittal of both." However, the court held that "[t]his must of course mean an acquittal by a court of competent jurisdiction, in the same State in which the subsequent prosecution was pending, and for the same offense." Because the prior acquittal was by a New Jersey court, this Court found that the rule of consistency was not applicable "since the trial and acquittal in New Jersey, could not deprive this State of jurisdiction over offenses committed within its

borders." *Id.* at 536. Thus, it would appear that this Court by dicta stated in *Bloomer* that the rule of consistency would apply to separate trials where there had been a prior acquittal of one conspirator in this State and the "subsequent prosecution was pending" in this State.

Gardner cites other cases to buttress his contentions. In *State v. Tom,* 12 Dev. 569, 13 N.C. 569 (1830) appellant was charged with conspiracy to murder. His alleged co-conspirator was acquitted prior to appellant's conviction. The court held that where two are charged with conspiracy and one is acquitted, the conviction of the other cannot stand. The court analogized its holding to the rule which discharged an accessory where the principal had been acquitted.[2]

In *United States v. Bruno,* 333 F. Supp. 570 (E.D. Pa. 1971) the court held that the prior acquittal of all of the other co-conspirators precludes conviction of the remaining con- spirator. *See Eyman v. Duetsch,* 92 Ariz. 82, 373 P.2d 716 (1962); *People v. Levy,* 299 Ill. App. 453, 20 N.E.2d 171 (1939). We note, however, that Gardner was actually tried and convicted prior to Lubow's "acquittal," a fact which serves to distinguish the instant case from *Bloomer, Tom* and *Bruno.*

Other courts, however, have held that the rule of consistency does not apply to separate trials of co-conspirators. In *United States v. Musgrave,* 483 F.2d 327 (5th Cir. 1973), the United States Court of Appeals held that an alleged conspirator could be convicted even though his alleged co-conspirator had been previously acquitted. A California court of appeals has made a similar holding. *People v. Superior Court,* 44 Cal. App. 3d 494, 118 Cal. Rptr. 702 (Ct. App. 1975). Other courts have held that a prior guilty plea or plea of non vult will stand despite the later acquittal of all of the alleged co-conspirators. *United States v. Strother,* 458 F.2d 424 (5th Cir. 1972); *Rosecrans v. United States,* 378 F.2d 561 (5th Cir. 1967); *State v. Oats,* 32 N.J. Super. 435, 108 A.2d 641 (Super. Ct. App. Div. 1954).

---

2. In Lewis v. State, 285 Md. 705, 404 A.2d 1073 (1979), this Court abolished the common law rule requiring that an accessory be tried after the principal was sentenced and held that trial of the accessory could take place even before trial of the principal.

Two cases involving the same chronological pattern as the instant case are particularly instructive. In *People v. Holzer,* 25 Cal. App. 3d 456, 102 Cal. Rptr. 11, 13 (Ct. App. 1972), the court declared:

> But a jury trying X alone, can find that X and Y were co-conspirators and can properly convict X. The fact that Y is later acquitted of conspiracy with X by a different jury on a different presentation of evidence, cannot affect the validity of the first conviction. [(citations omitted)].

The most persuasive reasons for not applying the rule to separate trials were set forth in *Platt v. State,* 143 Neb. 131, 8 N.W.2d 849 (1943). There the Supreme Court of Nebraska said:

> We think that the verdict of a jury on a separate trial, finding one of two persons charged with conspiracy to be guilty, concludes also the guilt of the other for the purposes of that trial, otherwise no conviction could have been had. The guilt of the co-defendant was found as against the convicted defendant. This element of the crime having been established as against the convicted defendant the crime was complete and the conviction final as to him, irrespective of what some other jury on different evidence might decide. The rule cannot logically be otherwise. The subsequent acquittal of the other necessarily amounts to no more than that there was a failure of proof as to him. But if they were tried together, a failure of proof as to one would amount to a failure of proof as to both because the evidence was the same. *It seems to us that reason and sound logic do not support the rule where one of two conspirators is convicted in a separate trial, that he shall be discharged because the second may be acquitted for a multitude of reasons having nothing to do with his guilt.* The acquittal of the second conspirator could well result from the death or absence of an important state witness, the

incompetency of a confession of the convicted conspirator in the second trial, the incompetency of a plea of guilty entered by the convicted conspirator at his trial, or for any other reason that would amount to a failure of proof. [8 N.W.2d at 855 (emphasis added)].

We believe that *Platt* represents the better reasoned point of view, and we adopt it. To the extent that the language in *Bloomer* conveys a contrary view, it is expressly disapproved.

We hold therefore that the rule of consistency does not apply to separate trials but that each trial must be sufficient unto itself to support its verdict.[3] In the instant case Gardner elected to be tried separately and in his trial he litigated the issue as to his co-conspirator's sanity.[4] The trial court stated:

I find that the State has met its burden and has established beyond a reasonable doubt that Mr. Lubow . . ., although he suffered from a mental disorder . . . [did] have substantial capacity to appreciate the criminality of his conduct during the

---

3. In light of the facts of this case, we do not decide if the defense of collateral estoppel or any other defense would be available to a conspirator whose sole co-conspirator was acquitted first.

4. Gardner cites Regle v. State, 9 Md. App. 346, 264 A.2d 119 (1970) for support. Regle was charged with conspiring with one Fields and Chamblee to rob with a deadly weapon and for carrying a deadly weapon openly with intent to injure. The indictment against Chamblee was "nol prossed." Regle was tried separately and convicted of both charges. At his trial evidence was adduced through a police officer that Fields had been examined by State psychiatrists at the Clifton Perkins State Hospital and found "not guilty by reason of being insane at the time of the alleged crime."

The Court of Special Appeals, having indicated in its opinion early on that, at least, two competent minds were required to form a conspiracy, reversed and remanded "in the interest of justice." Chief Judge Murphy (now Chief Judge of this Court) stated:

If, upon retrial, the State intends to charge only Fields and appellant as conspirators, and the evidence properly shows that Fields was legally insane at the time the agreement to perpetrate the robbery was concluded, then even though Fields has not been acquitted of the offense of conspiracy by a judicial determination that he was insane, nevertheless the requisite *joint* criminal intent being absent, appellant cannot properly be convicted of engaging with Fields in a criminal conspiracy.

To the extent of this holding, *Regle* is consistent with our holding in this case; otherwise it offers Gardner no solace.

period in question and he did have substantial capacity to conform his conduct to the requirements of law during that period and, therefore, I rule in the legal sense that he was not insane during that period and that, therefore, the conspiracy was formed.

Thus, the trial court found that there was no impairment to Lubow's ability to form a criminal intent and, indeed, that both Gardner and Lubow had formed the criminal intent to murder. Gardner elected a separate trial where his guilt was established beyond a reasonable doubt; what happened in Lubow's subsequent trial is of no avail to Gardner.

We conclude that a verdict on a separate trial, establishing the guilt of one of two conspirators also conclusively establishes the guilt of the other for purposes of that trial.

## II.

Gardner argues that he did not commit the crime of solicitation because he did not actually direct McDonald to proceed with the murder of Blum or pay him all the money promised for committing the crime. What Gardner fails to take into account is that the crime of solicitation was committed when he asked McDonald to commit the murder. Neither a final direction to proceed nor fulfillment of conditions precedent (payment of the money) was required. The gist of this offense is incitement.

Applying these principles to the instant case we agree that the crime of solicitation was committed. Gardner made a clear request that Blum be killed. He further enticed McDonald by promising money and supplying a gun, ammunition and expense money. The evidence was more than sufficient to support the verdict.

*Judgment affirmed; appellant to pay the costs.*