**GOVERNMENT OF the VIRGIN ISLANDS, Appellant,**

**v.**

**Franke HOHEB, Appellee.**

**No. 84–3045.**

United States Court of Appeals, Third Circuit.

Argued April 24, 1985.

Decided Nov. 21, 1985.

James W. Diehm, U.S. Atty., Hugh P. Mabe, III (argued), Asst. U.S. Atty., Charlotte Amalie, St. Thomas, V.I., for appellant.

Alexander A. Farrelly (argued), Birch, deJongh, & Farrelly, Charlotte Amalie, St. Thomas, V.I., for appellee.

Before ADAMS, GARTH and BECKER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Appellee Franke A. Hoheb and his brother, Derek Parrilla, were charged with violations of Virgin Islands criminal law arising out of a marijuana smuggling operation set up by undercover federal agents. Inconsistent verdicts returned by the jury respecting these two defendants provide the background for this appeal by the government.

Count I of the indictment against Hoheb and Parrilla charged them with conspiracy with intent to distribute marijuana, V.I. Code Ann. tit. 19, § 609 (1976); count II alleged possession of marijuana with intent to distribute, V.I.Code Ann. tit. 19, § 604(a) (1976). The jury found both defendants guilty of simple possession of marijuana, a lesser included offense within count II; it found Hoheb guilty of the conspiracy charge, but acquitted Parrilla on that count.

On November 16, 1983, the district court granted Hoheb's motion for judgment of acquittal on count I, the conspiracy count, ruling that the conviction could not stand in light of Parrilla's acquittal, and finding that there was insufficient evidence that any other persons were involved in the alleged conspiracy. The government filed a timely appeal. We have jurisdiction under 18 U.S.C. § 3731 (1982). *United States v. Wilson,* 420 U.S. 332, 352–53, 95 S.Ct. 1013, 1026–27, 43 L.Ed.2d 232 (1975); *United States v. Everett,* 700 F.2d 900, 902 (3d Cir.1983).

Because we hold that Hoheb's conspiracy conviction is supported by substantial evidence, and that the acquittal of Parrilla does not preclude the conviction of Hoheb on count 1, the jury's verdict on that count will be reinstated.

### I.

During the time in question, Hoheb was Chief Enforcement Officer for the Virgin Islands Department of Conservation and Cultural Affairs. On February 15, 1983, John Allen, an informant acting at the direction of Drug Enforcement Administration (DEA) agents, contacted Hoheb to see if the official was interested in distributing narcotics in the Virgin Islands supplied by a group in Puerto Rico. Allen testified that Hoheb expressed interest, App. at 48–49, and that over subsequent weeks they met repeatedly and developed a plan to carry out the distribution.

Allen testified that in furtherance of this plan, Hoheb sent his brother, Parrilla, to meet with putative drug suppliers. On April 12, 1983, Parrilla met Allen and two undercover DEA agents at Brewers Bay Beach. Parrilla first assured the agents that adequate payment and security could be provided to effect an off-shore transfer of marijuana. Parrilla then agreed to purchase 150 pounds of marijuana at $400 per pound, *see* App. at 67–70, and was given a one-pound sample of marijuana whose sale would generate front money for the ultimate transaction. *See* App. at 71–73. Allen further testified that on the evening of April 12, he visited Hoheb's apartment and witnessed both Hoheb and Parrilla weighing and bagging the sample marijuana. *See* App. at 73.[1]

Andres Amador, a DEA agent present at the Brewers Bay meeting, corroborated Allen's testimony. Amador testified that Parrilla stated he had been authorized by Hoheb to negotiate the purchase and delivery of marijuana. *See* App. at 112. Parrilla then reviewed the mechanics of the contemplated delivery, in which he and an unnamed friend were to meet the suppliers' boat at Thatch Cay, transfer the marijuana to a second boat, and bring it to shore. *See* App. at 114. Amador testified that he then gave Parrilla the sample marijuana, *see* App. at 115–16, and that a second meeting was arranged for April 15, at which time Parrilla was to provide $2,000 as a deposit for the 150 pounds of marijuana. *See* App.

---

1. A small postal scale was found in a subsequent search of the apartment (it was seized and introduced into evidence).

at 113. Amador further testified that he met Parrilla again on April 15, the day scheduled for the transfer, that Parrilla failed to deliver any of the promised deposit monies, but assured Amador that if the transfer occurred as scheduled, Parrilla would pay $20,000 within a week after the transfer. *See* App. at 117.

The record further discloses that on April 14 Allen again met with Hoheb, who produced a final plan for the transfer of the marijuana. *See* App. at 76–77; App. at 212. This plan, written in Hoheb's hand and in the form of a timetable of events, was introduced at trial. As contemplated by this schedule, Parrilla and a friend were to leave Coki Beach at 6:30 p.m., the boats were to rendezvous at 7:00, and at 7:35, Parrilla was to arrive at Hoheb's apartment. *See* App. at 242. Allen testified that this timetable coincided with a change in plans, whereby after the marijuana was transferred at sea, Parrilla and his friend were to bring it directly to Sapphire Bay where Hoheb's apartment was located.[2] *See* App. at 77.

Following Parrilla's April 15 meeting with Amador, Allen put Hoheb in telephone communication with Amador, who continued to pose as a supplier. Hoheb apologized for any difficulties and requested that the plan be carried out nevertheless. Late in the day, Hoheb called Allen and cancelled the entire arrangement, because he had observed an unidentified boat in the area. That evening, Hoheb and Parrilla were arrested at Hoheb's apartment.

## II.

In ruling that Hoheb's conspiracy conviction could not stand following Parrilla's acquittal on that charge, the district court relied on the common law "rule of consistency." That rule provides that where all alleged coconspirators save one are acquitted, the conviction of the remaining defendant must be vacated.

The "rule of consistency" has been applied by numerous federal and state courts,[3] but over the years it has steadily been narrowed to apply only to the type of case before us now, where the acquittal and conviction are decided in the same trial.[4] Thus, in *United States v. Espinosa-Cerpa*, 630 F.2d 328 (5th Cir.1980), the court declined to extend the rule to a case where all alleged coconspirators were acquitted, and the single remaining conspirator was tried in a later prosecution. *Accord People v. Holzer*, 25 Cal.App.3d 456, 102 Cal.Rptr. 11, 13 (1972); *Gardner v. Maryland*, 286 Md. 520, 408 A.2d 1317, 1321 (1979). The rule has also been considered inapplicable where it is alleged and proven that the defendant conspired with persons unknown. *United States v. Allen*, 613 F.2d 1248, 1253 (3d Cir.1980); *United States v. Artuso*, 618 F.2d 192, 197 (2d Cir.), *cert. denied*, 449 U.S. 861, 101 S.Ct.

---

**2.** Allen had testified that in the initial plan, the marijuana was to be landed at Lindquist Bay rather than Sapphire Bay. In summarizing this earlier plan, Allen stated:

> [T]he plan was that [Hoheb's] brother, Derek, would be at Lindquist Bay with a van supplied by his other brother, Jesse.... Derek would proceed out, with a friend ... named ... Edgar, and proceed out around Thatch Cay, where the boat from Puerto Rico would be with the merchandise. They would put it in an open fishing boat, and drive it back to Lindquist Bay, and put it in the van, and drive it to his aunt's house, to secure it.

App. at 54–55.

**3.** *See, e.g., United States v. Patterson*, 678 F.2d 774, 781 (9th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); *United States v. Albert*, 675 F.2d 712, 713 (5th Cir.1982);

*United States v. Williams*, 503 F.2d 50, 54 (6th Cir.1974); *United States v. Shuford*, 454 F.2d 772, 779–80 (4th Cir.1971); cases collected in Annot., 19 A.L.R.4th 192 (1983).

**4.** Despite the widespread acceptance of the "rule of consistency" concerning divergent verdicts in a single trial, this Court has never had occasion to apply it or make it part of a holding. Our discussions of it have always been in dictum. *See United States v. Twigg*, 588 F.2d 373, 382 n. 11 (3d Cir.1978); *United States v. Gordon*, 242 F.2d 122, 125 (3d Cir.), *cert. denied*, 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436 (1957); *United States v. Fox*, 130 F.2d 56, 58 (3d Cir.), *cert. denied*, 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535 (1942). Interestingly, the common law rule has recently been reconsidered and interred in the land of its birth. *See R. v. Holmes*, [1980] 2 All E.R. 458, 461 (C.A.).

164, 66 L.Ed.2d 77 (1980); *Pomerantz v. United States,* 51 F.2d 911, 913 (3d Cir. 1931); *see also Joyce v. United States,* 153 F.2d 364, 367 (8th Cir.) (only other convicted conspirator died following the trial), *cert. denied,* 328 U.S. 860, 66 S.Ct. 1349, 90 L.Ed. 1631 (1946).[5] In addition, it has been held that a grant of immunity to one defendant will not invalidate his coconspirator's conviction. *Gardner, supra,* 408 A.2d at 1320; *Michigan v. Berry,* 84 Mich. App. 604, 269 N.W.2d 694, 696 (1978). On this appeal, the government contends that the district court judge erred in concluding that there was insufficient evidence to support the involvement of conspirators other than Hoheb and Parrilla, and that Hoheb's conviction therefore should have been affirmed under the rule of *Allen, supra.*

The evidence cited by the government to support this argument consists of certain out-of-court statements by Hoheb and Parrilla. For example, both men told Allen they needed the marijuana sample to generate front money, an indication, according to the government, that other buyers were involved in the transaction. Appellant's Br. at 38. Further, the government argues that Hoheb suggested to Allen that other parties would be involved in the planned distribution. *Id.* at 40–41. The government also cites Hoheb's oral and written plans for the transfer, as well as Parrilla's statements at the Brewers Bay meeting, that referred to the involvement of Parrilla's friend Edgar. *Id.* at 39–40.

■ This evidence, viewed in the light most favorable to the government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Dixon,* 658 F.2d 181, 188 (3d Cir.1981), may lead a reasonable jury to conclude that Hoheb conspired with persons other than Parrilla to import and distribute marijuana. Hoheb planned to purchase a large quantity of the drug, in a transfer at sea which would surely require the work of more than one person but in

which he would not participate. He later intended to redistribute the marijuana for profit. Such an operation would seem to require more than a single person on a boat and another overseeing the transfer. Hoheb confirmed this, repeatedly referring during the course of his conversations with Allen to a third person, and even naming that person in his final written and oral plans the day before the intended transfer. It is unlikely that, at that late date, Hoheb had not communicated with this additional participant and arranged his involvement.

■ The district court discounted the importance of Hoheb's and Parrilla's admissions, ruling that those statements alone did not show by a "preponderance of the evidence" that others were involved in the conspiracy. App. at 38. However, this ruling appears to be a misapplication of the coconspirator exception to the hearsay rule; that exception requires independent proof of a conspiracy before a coconspirator's out-of-court statement may be introduced against a defendant. Fed.R.Evid. 801(d)(2)(E); *see generally United States v. Ammar,* 714 F.2d 238, 245–57 (3d Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). But that doctrine is designed to protect defendants from others' hearsay statements that are unrelated to the conspiracy, not from their own inculpatory statements. A defendant's admissions provide acceptable evidence of others' participation; no specific evidence, such as the identity of the coconspirators and proof of their acts, is required. To hold otherwise would be to contradict the rule of *Allen* and other cases that one may be found guilty of conspiring with "persons unknown."

Further, there was no need for the government to corroborate independently the truth of Hoheb's admissions. It is well recognized that admissions made by a defendant after the commission of a crime must be corroborated in order to support a conviction, *Opper v. United States,* 348

---

**5.** Thus, most conspiracy indictments or informations now "contain the catch-all charge that defendants were also involved with 'other persons unknown.'" *People v. James,* 189 Cal. App.2d 14, 10 Cal.Rptr. 809, 810 (1961).

U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954), and this rule applies in conspiracy cases. *United States v. Todd,* 657 F.2d 212, 216 (8th Cir.1981), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1288, 71 L.Ed.2d 469 (1982); *United States v. Strickland,* 493 F.2d 182, 187 (5th Cir.), *cert. dismissed,* 419 U.S. 801, 95 S.Ct. 9, 42 L.Ed.2d 32 (1974). But in *Warszower v. United States,* 312 U.S. 342, 345, 61 S.Ct. 603, 605, 85 L.Ed. 876 (1941), the Supreme Court held that admissions made before a crime occurred need not be corroborated, and more recent cases have extended this holding to apply to statements made during the course of a conspiracy. *United States v. Soteras,* 770 F.2d 641, 644 n. 4 (7th Cir. 1985); *United States v. Pennell,* 737 F.2d 521, 537 (6th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Head,* 546 F.2d 6, 9 (2d Cir.1976), *cert. denied sub nom. Wheaton v. United States,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *cf. United States v. Northrup,* 482 F.Supp. 1032, 1037 (D.Nev.1980) (admission made during the life of the conspiracy but after declarant's participation ended requires corroboration).

The reasoning of these courts would appear to be dispositive. The rule requiring corroboration of statements made after the fact stems from the need to avoid convictions based on confessions induced or coerced during police investigations, or on other involuntary statements made during that stressful and confused time. *Smith v.*

*United States,* 348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). In contrast, admissions made while the crime is in progress bear none of these indicia of unreliability.

In sum, the circumstantial evidence and Hoheb's own statements could reasonably have caused the jury to conclude that Hoheb acted with an unknown person other than Parrilla. A conspiracy conviction may properly rest on such a record. *United States v. Luschen,* 614 F.2d 1164, 1171 (8th Cir.1980).

### III.

The conspiracy case against Hoheb, following Parrilla's acquittal, rests largely on his own admissions. While this evidence of conspiracy with others is less substantial than the proof of Hoheb's conspiracy with Parrilla, we are bound by the rule that a jury conviction must be reviewed in the light most favorable to the government. The evidence presented here, viewed in this fashion, supports the decision that the jury reached.[6]

The matter will be remanded to the district court for further proceedings in accordance with this opinion.

GARTH, Circuit Judge, concurring.

I am satisfied that the authorities cited in the majority opinion support the court's holding that Hoheb's conviction may be sustained on the basis of evidence provided

---

**6.** Because of the result reached today, we need not decide whether the rule of consistency retains validity. However, we note that recent Supreme Court decisions may call its vitality into question. The Supreme Court has relied upon the rule of consistency in its holdings in at least three cases. *Hartzel v. United States,* 322 U.S. 680, 682 n. 3, 64 S.Ct. 1233, 1234, n. 3, 88 L.Ed. 1534 (1944); *Morrison v. California,* 291 U.S. 82, 93, 54 S.Ct. 281, 286, 78 L.Ed. 664 (1934); *Gebardi v. United States,* 287 U.S. 112, 123, 53 S.Ct. 35, 38, 77 L.Ed. 206 (1932). In none of these cases did the Court discuss the rule of consistency at any length; rather, it simply asserted the rule as an established point of law. More recently, the Court handed down two opinions whose rationales may undermine the solidity of the rule of consistency. In *Stan-*

*defer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed. 689 (1980), it held that a person could be convicted of aiding and abetting a crime even though his principal was acquitted in a separate proceeding. During the past term, in *United States v. Powell,* — U.S. ——, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Court reaffirmed and explained the long-established rule that a jury may reach inconsistent verdicts with respect to a single defendant in a criminal trial. The rule of consistency pertains to inconsistent verdicts for co-defendants at a single trial, and therefore neither *Standefer* nor *Powell* is directly on point. But while the situations among the cases are not identical, they are similar, and *Standefer* and *Powell* suggest that the rule of consistency may be a vestige of the past.

by Hoheb's own admissions. However, I would go somewhat further than the majority has ventured, and I would hold alternatively that Hoheb's conviction can be sustained as well by drawing upon the teachings of *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) and *United States v. Powell,* —— U.S. ——, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

The government has argued, and I agree, that *Standefer* and *Powell* have undercut the common law "rule of consistency." That "rule" provides that where all but one of the alleged co-conspirators have been acquitted, the conviction of the remaining co-conspirator must be set aside. In *Standefer,* (admittedly an aiding and abetting case) the Supreme Court held that even though the principal was acquitted in a separate proceeding, the defendant who aided and abetted the principal's crime could, nevertheless, be convicted. Thereafter in *Powell,*[1] Justice Rehnquist writing for the Court acknowledged once again that a jury may reach inconsistent verdicts in a criminal trial.

Thus, in my view it is clear that even though the crime charged is a criminal conspiracy which must involve at least two individuals, the acquittal of one defendant and the conviction of his co-defendant may nevertheless be upheld even though the verdict may be deemed inconsistent and irrational. As Chief Justice Burger wrote in *Standefer,* "While symmetry of results may be intellectually satisfying, it is not required." 447 U.S. at 25, 100 S.Ct. at 2008.

I am satisfied that the lessons taught in *Standefer* and *Powell* are applicable even to a criminal conspiracy where inconsistent verdicts were reached during the same trial and by the same jury. While I acknowledge that *Standefer* involves aiding and abetting and not a conspiracy as is charged

here, I believe the relevant teaching of *Standefer* is that a jury may reach conflicting results with regard to the same crime. This being so, I can discern no reason why the instant case should not be controlled by that principle.

It may be argued by some that neither *Standefer* nor *Powell* have affected the "rule of consistency" and that the Supreme Court if faced with the issue we are faced with here, would adhere to that doctrine. I cannot subscribe to that position. In my opinion, the rule of consistency since *Standefer* and *Powell* is no longer a viable doctrine. Accordingly, a jury which returns inconsistent verdicts in a case such as this one, where the defendant Parrilla was acquitted and the defendant Hoheb was convicted, may have its verdict upheld under the principle of those authorities. Thus, in my view, the rule of consistency is, as Judge Adams intimates, a rule which is "a vestige of the past."[2]

I therefore concur in the result reached by the majority which reinstates Hoheb's Count 1 conviction.

---

**1.** In *United States v. Powell,* —— U.S. ——, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Court reaffirmed *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), which held that a criminal defendant convicted by a jury on one

count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count.

